IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **EDWIN JESUS GARCIA CASTILLO,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:26-cv-01166** |
| | ) | **Judge Aleta A. Trauger** |
| **CHRISTOPHER BULLOCK, *et al.*,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**MEMORANDUM & ORDER**

Petitioner Edwin Jesus Garcia Castillo has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, seeking an order of immediate release from detention, among other requests for relief. (Doc. No. 1.) After the court issued an Order to Show Cause (Doc. No. 6), the Respondents (collectively, the "Government") filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and (b)(6) (Doc. No. 9), along with a supporting Memorandum of Law. (Doc. No. 10.), to which the Petitioner responded. (Doc. No. 18.) For the following reasons, the writ will be granted, as outlined below, and the Motion to Dismiss will be denied in its entirety.

## I. BACKGROUND

The Petitioner is a citizen of Mexico who came to the United States with his parents in 2000 under a tourism visa when he was approximately one year old. (Doc. No. 1 ¶ 33.) He grew up in the United States and later received protection from deportation under the immigration policy known as Deferred Action for Childhood Arrivals ("DACA"). (*Id.*)

In 2018, the Petitioner was apprehended by immigration authorities because he had overstayed his tourism visa. (*Id.* ¶ 34.) His DACA protection was revoked, and he was later deported to Mexico in January 2019. (*Id.*) Within days of his return to Mexico, the Petitioner was kidnapped by cartel members. (*Id.* ¶ 35.) His parents obtained his release by paying a ransom, but

the Petitioner was kidnapped at least two other times by cartel members. (*Id.* ¶¶ 35–36.) Scared for his life, the Petitioner sought protection in the United States in April 2024. (*Id.* ¶ 37.) He was detained by immigration authorities upon arrival and initially placed in expedited removal proceedings. (Paul Grey Decl., Doc. No. 11 ¶ 8.) However, the United States Citizenship and Immigration Services ("USCIS") later placed him in standard removal proceedings after concluding that the Petitioner had adequately established a credible fear that he would be tortured if forced to return to Mexico. (Doc. No. 1 ¶ 38; Doc. No. 11 ¶ 9.) The USCIS issued a Form I-862 Notice to Appear to the Petitioner and he was paroled into the United States. (Doc. No. 1 ¶ 38; Doc. No. 11 ¶ 9.)

Since his release, the Petitioner has "resided peaceably" with his family in Gallatin, Tennessee. (*Id.* ¶ 39.) He has filed for asylum, received work authorization, and obtained employment. (*Id.*) On August 14, 2026, the Petitioner showed up to his regularly scheduled check-in with immigration authorities in Nashville, Tennessee. (*Id.* ¶ 40.) At the check-in, the Petitioner was summarily detained by agents of Immigration and Customs Enforcement ("ICE"). (*Id.* ¶ 41.) He was later transported to an ICE facility in West Tennessee. (Doc. No. 10 at 5.)

## II. PROCEDURAL HISTORY

The Petitioner filed his Petition on the same day that he was detained by ICE. On August 18, 2026, the court issued an Order directing the Government to show cause by August 21, 2026 as to why the writ should not be granted. (Doc. No. 6.) On the show cause date, the Government filed a Motion to Dismiss (Doc. No. 9),[1] which was accompanied by a Memorandum of Law (Doc.

---

[1] The Petitioner claims that a motion to dismiss is not a proper pleading in response to a petition for a writ of habeas corpus, citing *Browder v. Dir., Dep't of Corr. of Illinois*, 434 U.S. 257 (1978). (Doc. No. 18 at 1 n.1.) In that case, the Supreme Court suggested almost fifty years ago in a footnote that a motion to dismiss under Rule 12 is not applicable in habeas corpus proceedings. *See Browder*, 434 U.S. at 269 n.14. Many courts have treated this suggestion as dictum and otherwise irrelevant, given changes to the habeas corpus statute after *Browder*. *See Hardimon v. Payne*, No. 4:24-cv-01011-BBM, 2026 WL 1857731, at *3

No. 10) and Declaration signed by Paul Gray, a supervisor employed with ICE. (Doc. No. 11.) The Petitioner filed a response in support of the Petition. (Doc. No. 18.)

## III. DISCUSSION

The Petitioner asserts that the Government violated: (1) the Administrative Procedure Act ("APA"), the Immigration & Nationality Act ("INA"), and the INA's implementing regulations by detaining the Petitioner and terminating his parole without individualized consideration and specific findings; (2) the Petitioner's substantive due process rights under the Fifth Amendment because his detention does not serve any legitimate interests; (3) his procedural due process rights under the Fifth Amendment because the Government failed to provide him with any process before he was detained; and (4) his free-speech rights under the First Amendment because he was detained in retaliation for his immigration-related advocacy. (Doc. No. 1 ¶¶ 11, 39, 58–91.)

The Petitioner seeks a writ of habeas corpus declaring that the Petitioner's continued detention is unlawful and that his re-detention without an individualized determination violates the INA, the APA, and the Due Process Clause of the Fifth Amendment. (*Id*. at 20.) The Petitioner further requests an order directing the Government to immediately release him from custody on his prior conditions of parole and return all of his private property. (*Id*.) The Petitioner further seeks an order enjoining the Government from (1) transferring him outside of the Middle District of Tennessee while his Petition is pending; and (2) re-detaining him without first providing a pre-deprivation hearing before an impartial adjudicator. (*Id*.) Finally, the Petitioner seeks an award of attorneys' fees under the Equal Access to Justice Act, as amended, 28 U.S.C. § 2412. (*Id*.)

---

(E.D. Ark. Mar. 31, 2026) (quoting *Ebert v. Clarke*, 320 F. Supp. 2d 902, 910 (D. Neb. 2004) (statutory changes after *Browder*'s "dictum" confirm "that a motion *is* a permissible response to a habeas petition.") (emphasis in the original). This court has taken the same view. *See Johnson v. Mills*, No. 3:07-0695, 2008 WL 413636, at *7 (M.D. Tenn. Feb. 12, 2008) (Echols, J.) ("Respondent's motion to dismiss is an appropriate response to the petition for habeas corpus relief.").

The Government raises two arguments. First, it argues that the Petitioner challenges his placement in expedited removal proceedings under 8 U.S.C. § 1225(b)(1). (Doc. No. 10 at 7–9.) In the Government's view, the Petition must be dismissed because 8 U.S.C. § 1252(a)(2)(A) bars habeas challenges "relating to the implementation or operation of an" expedited removal order under § 1225(b)(1), except as provided in 8 U.S.C. § 1252(e). (*Id*. at 7–8 (quoting 8 U.S.C. § 1252(a)(2)(A)(i)).) Second, the Government argues that the Petitioner lacks standing to bring a claim against USCIS "because there is no remedy that this Court can provide Petitioner." (*Id*. at 1–2.) The Government does not otherwise address any of the Petitioner's claims on their merits.

The Petitioner responds that he "does not challenge any decision relating to expedited removal." (Doc. No. 18 at 2.) That is because the Petitioner "is indisputably not currently in expedited removal proceedings" under 8 U.S.C. § 1225(b)(1). (*Id*.) Instead, the Petitioner claims that he was "moved … out of *expedited* removal proceedings" and into "*standard* removal proceedings" after he "passed a credible fear interview ('CFI') and was issued a Notice to Appeal ('NTA')" by immigration authorities in April 2024. (*Id*. (emphasis added).) He now challenges "the fact of his unlawful detention," which challenge is "not barred by 8 U.S.C. § 1252(a)(2)(A), or any other jurisdiction-stripping provision of federal law." (*Id*. at 2–3.) The Petitioner further asserts that the Government's standing argument fails because he does not challenge any decision made by USCIS. (*Id*. at 2.) As explained below, the court finds that the Petitioner was moved out of expedited removal proceedings in April 2024 and therefore is not subject to § 1225(b)(1). The court further finds that the Government's purported revocation of the Petitioner's parole violated the APA and INA, which mandates the Petitioner's immediate release from detention on his prior conditions of parole.

### A. The Petitioner is Detained Under 8 U.S.C. § 1226(a)—Not § 1225(b)(1)

Noncitizens subject to expedited removal proceedings can avoid expedited removal by indicating "either an intention to apply for asylum" or "a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). In such cases, the noncitizen must be referred "for an interview by an asylum officer," who must determine whether the noncitizen "has a credible fear of persecution." *Id.* §§ 1225(b)(1)(A)(ii), (B)(ii). If the asylum officer determines that a noncitizen's asserted fear is credible, the noncitizen "will receive 'full consideration' of his asylum claim in a *standard removal hearing*." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 110 (2020) (quoting 8 C.F.R. § 208.30(f)) (emphasis added).

Here, the record makes clear that the Petitioner was in standard removal proceedings at the time the Government purported to revoke his parole. Although the Petitioner was initially placed in expedited removal proceedings under 8 U.S.C. § 1225(b)(1) after he was detained in April 2024 (Doc. No. 11 ¶ 8), he subsequently indicated an intention to apply for asylum based on his fear that he would be tortured if forced to return to Mexico. (Doc. No. 1 ¶ 38.) Later, he received a credible fear interview before a USCIS asylum officer. (Doc. No. 11 ¶ 9.) The asylum officer determined that the Petitioner had a credible fear of persecution and issued a Form I-862 Notice to Appear, which terminated the Petitioner's expedited removal proceedings and started standard removal proceedings. (*Id.*) These facts—which the Government *concedes* (Doc. No. 10 at 5)—make crystal clear that the Petitioner was subject to standard removal proceedings. *See Coronado Aldo v. Lewis*, No. 4:26-cv-00388-GNS at *4 (W.D. Ky. July 22, 2026) (finding that petitioner "was placed in standard removal proceedings" when he claimed asylum and "was determined to have a credible fear" by an asylum officer, "as reflected by the issuance of the Form I-862 Notice to Appear"); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988, at *1 (D. Mass.

Aug. 14, 2025) (concluding that USCIS terminated expedited removal proceedings and commenced standard removal proceedings after finding noncitizen's claimed fear of returning to home country "credible" and issuing Notice to Appear), *appeal dismissed,* No. 25-1996, 2026 WL 1051975 (1st Cir. Feb. 10, 2026); *Perez-Toc v. Warden, Krome N. Serv. Processing Ctr.*, No. 26-cv-25844-JB, 2026 WL 2619946, at *1 (S.D. Fla. Sept. 4, 2026) (same).

For these reasons, the court finds that the Petitioner is not currently detained under 8 U.S.C. § 1225(b)(1). Instead, the Petitioner is subject to 8 U.S.C. § 1226(a)—the "default rule" governing the arrest and detention of noncitizens pending removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Consequently, the court declines to dismiss the Petition based on § 1252(a)(2)(A)'s bar on judicial review of claims "relating to the implementation or operation of an" expedited removal order under § 1225(b)(1).

### B. The Government Failed to Comply with the APA and INA when It Purported to Revoke the Petitioner's Parole

The first claim asserted by the Petitioner is that his detention and parole revocation is unlawful under the APA (5 U.S.C. § 706(2)(a)) and INA (8 U.S.C. § 1182(d)(5)(A)) and its implementing regulations (8 C.F.R. §§ 212.5(e)(1), (2)(i)). (Doc. No. 1 ¶¶ 58–65.) In the Petitioner's view, the Government violated these statutory and regulatory provisions because he "was not detained based on any individualized custody determination or parole revocation." (*Id.* ¶ 8.) This court agrees.

The APA requires a reviewing court to set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). The touchstone of arbitrary and capricious review is "reasoned decisionmaking." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983). An agency's action may survive review only if the agency sufficiently explains the action, which includes demonstrating a

"rational connection between the facts found and the choice made." *Id.* A reviewing court may not "infer an agency's reasoning from mere silence." *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1144 (D. Or. 2025) (citing *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008)).

The decision to grant parole under 8 U.S.C. § 1182(d)(5)(A) is determined "on a case-by-case basis." 8 U.S.C. § 1182(d)(5)(A). However, "when the purposes of such parole … have been served," § 1182(d)(5)(A) provides that "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

To terminate the previously granted parole, the Government must comply with the applicable regulatory and statutory requirements. *Martinez v. Raycraft*, No. 1:26-cv-547, 2026 WL 621359, at *4 (W.D. Mich. Mar. 5, 2026). Section 212.5(e)(2)(i) is one such regulatory requirement. This regulation provides:

> In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.

8 C.F.R. § 212.5(e)(2)(i). In other words, an earlier grant of parole may be terminated "only if the purpose of parole is accomplished, or humanitarian reasons and the public benefit no longer warrant parole." *Kenzhebaev v. Noem*, 820 F. Supp. 3d 647, 656 (W.D. Mich. 2025) (quoting *Loaiza Arias v. LaRose*, No. 3:25-cv-02595-BTM-MMP, 2025 WL 3295385, at *3 (S.D. Cal. Nov. 25, 2025) (citing 8 C.F.R. § 212.5(e))). Numerous federal courts have concluded that the termination of a noncitizen's parole under 8 U.S.C. § 1182(d)(5)(A) requires an "individualized determination or an opportunity to be heard," which necessitates "(1) a decision by an appropriate

official on whether the purpose of parole has been served; (2) written notice of the reasons for the termination; and (3) an opportunity to rebut the reasons given for the termination." *Lozano Castano v. LaRose*, No. 3:26-cv-01747-RBM-VET, 2026 WL 1194854, at *2 (S.D. Cal. May 1, 2026); *Marceau v. Noem*, 26-cv-237, 2026 WL 368953, at *1 (W.D. Tex. Feb. 9, 2026) (when a noncitizen has been "paroled and released into the country, where she has been living at liberty for over two years," the government "may not revoke that liberty without an individualized determination of the need to do so," even when the noncitizen's "parole has expired or been terminated."); *Kenzhebaev v. Noem*, 820 F.Supp.3d 647, 656 (W.D. Mich. 2025) ("[J]ust as a grant of parole [to a noncitizen] requires an individualized review, revocation of parole requires a case-by-case assessment to comply with the [Immigration and Nationality Act].") (citation and quotation marks omitted).

Here, there is no record that the Government made any individualized determination regarding whether the purposes of parole had been accomplished or that humanitarian reasons and the public benefit no longer warrant parole before purporting to revoke the Petitioner's parole. In fact, the Government *does not even argue* that the revocation of the Petitioner's parole was the product of reasoned decisionmaking. So, the court is left with the only logical conclusion: the Government failed to comply with the applicable statutory and regulatory requirements when it purported to revoke the Petitioner's parole. Because the Government did not properly terminate the Petitioner's parole, the Petitioner's arrest and detention also exceeds the Government's authority, "unless there is some other valid reason to arrest him." *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 145 (W.D.N.Y. 2025). To date, the Government has failed to offer any other valid reason justifying the Petitioner's arrest.

Lastly, the court rejects the Government's argument that the Petitioner lacks standing to bring a claim against USCIS. (Doc. No. 10 at 1–2.) A cursory review of the Petition makes clear that USCIS is not even a named respondent in this action. (Doc. No. 1 ¶¶ 25–31 (listing the parties in this action).) Likewise, the Petitioner has confirmed that he is not challenging any decision made by USCIS. (Doc. No. 18 at 2.)

## IV. CONCLUSION

For the reasons stated herein, the Petitioner is entitled to relief under § 2241. The Government failed to comply with the relevant provisions of the APA and INA when it purported to revoke the Petitioner's parole and arrested him. The writ is therefore **GRANTED**.

The court **DECLARES** that the Government's continued detention of the Petitioner is unlawful. The court **FURTHER DECLARES** that the Petitioner's re-detention without an individualized determination by the Government violates the INA and APA. The Government is **ORDERED** to immediately release the Petitioner from custody. The Petitioner's release **SHALL** occur in no case later than 5:00 p.m. CST on Wednesday, September 30, 2026, with all possessions, property, and documents that Petitioner had at the time he was taken into custody.

The Government is **ENJOINED** from (1) transferring the Petitioner outside of the Middle District of Tennessee while his Petition is pending; and (2) re-detaining the Petitioner without first providing a pre-deprivation hearing before an impartial adjudicator.

Having determined that the Government's purported revocation of the Petitioner's parole and his arrest violates the APA and the INA and its implementing regulations, the court declines to address the Petitioner's arguments that his constitutional rights under the First and Fifth Amendments were violated. (Doc. No. 1 ¶¶ 66–91.) Finally, the Petitioner's request for attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, must be made by a separate motion.

The Government's Motion to Dismiss (Doc. No. 9) is **DENIED** in its entirety.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge